UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH LEE,
*on his own behalf and on behalf of others similarly situated*,

         *Plaintiff*,

v.

INSOMNIA COOKIES LLC, KRISPY KREME INC.,
SERVE U BRANDS, INC., and
SETH BERKOWITZ,

         *Defendants*.
_____

Case # 23-CV-6321-FPG

DECISION AND ORDER

## INTRODUCTION

  Plaintiff, Joseph Lee, brings this action against defendants INSOMNIA COOKIES LLC ("Insomnia Cookies"); KRISPY KREME INC. ("KKI"); SERVE U BRANDS, INC. (Serve U"); and SETH BERKOWITZ (collectively, the "Defendants"), alleging several violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff brings his claims individually and on behalf of a class of other employees similarly situated as a collective action under the FLSA and as a class action under Federal Rule of Civil Procedure 23. Defendants bring the present motion for partial summary judgment to dismiss the collective action and class claims. For the reasons stated below, Defendants motion for partial summary judgment is GRANTED and the collective action and class action claims are DISMISSED.

## BACKGROUND

  Except as otherwise noted, Plaintiff and Defendants agree as follows:

  On March 6, 2019, Plaintiff completed the Insomnia Cookies onboarding process at its store location on Mount Hope Avenue in Rochester, NY. ECF No. 35 at ¶1. The onboarding process consisted of reviewing and signing various company policies, including the MEDIATION AND

1

CLASS ACTION WAIVER AGREEMENT ("Waiver Agreement"), and was conducted through a third-party digital portal called EfficientHire. *Id.* ¶1-2.

Through EfficientHire, a "New Employee Account" was created for Plaintiff using his personal email address. *Id.* at ¶3. Plaintiff registered his new personalized account and accessed the EfficientHire portal through his registered personalized account while at the store on Mount Hope Avenue on March 6, 2019. *Id.* at ¶4. After gaining access to the EfficientHire portal using his unique account, Plaintiff was prompted to review and assent to several Insomnia Cookies policies, including the Waiver Agreement, by selecting "Yes" to the question, "Do you agree to the terms of this policy?" *Id.* at ¶5. The system tracked Plaintiff's answer, and whether Plaintiff agreed, and if he did, indicated the date and time. *Id.* Plaintiff denies any recollection of being shown any of these policies or reviewing and assenting to any individual policy. ECF No. 32-4 at ¶10. Defendant's records of the EfficientHire portal show that Plaintiff selected "yes" for each individual policy at a separate time. ECF No. 37-2 at 4. Plaintiff's assent to the Waiver Agreement was recorded in the EfficientHire software at 7:16:14 PM. ECF No. 37-2 at 4. After recording his assent to each individual policy, Plaintiff was shown a screen listing all the policies that he reviewed, giving him the option to go back and review those policies again and change his selection. ECF No. 35 at 6; ECF No. 37-1 at 28. The Waiver Agreement was among the policies that he could have reviewed a second time. ECF No. 35 at 6. Upon completing his review of all policies, Plaintiff was prompted to enter his unique account information again and click "approve" at which point an electronic signature was applied to all policies simultaneously, including the Waiver Agreement, at 7:21:56 PM. ECF No. 23-1 at 6; ECF No. 35 ¶7; ECF No. 37-2 at 3.

Defendants have moved for partial summary judgment to dismiss Plaintiff class and collective action claims, asserting that the signed Waiver Agreement precludes Plaintiff from bringing the claims alleged in the complaint as a class or collective action.

## LEGAL STANDARD

A "court shall grant summary judgment" if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). In deciding whether there is a genuine dispute as to a material fact, the court is not to evaluate credibility, and must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 454 (2d Cir. 2010).

Once the moving party has met its burden, the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The nonmoving party may not, therefore, "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Nor is a "mere scintilla of evidence" in support of the nonmoving party enough. *Anderson*, 477 U.S. at 252. The nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a

motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). But, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," the court must deny summary judgment. *Anderson*, 477 U.S. at 248.

## DISCUSSION

There is no genuine dispute as to whether Plaintiff signed the Waiver Agreement. The question the Court must address is whether the Waiver Agreement is enforceable against Plaintiff, and if enforceable, whether it precludes Plaintiff from bringing class and collective action claims in this case. Plaintiff argues that the Waiver Agreement is not enforceable against him because it is unconscionable. The Court disagrees with Plaintiff's unconscionability argument but will begin by addressing whether the Waiver Agreement as written precludes the class and collective action claims brought in this case.

I. **The Waiver Agreement Prohibits the Class and Collective Action Claims in This Case.**

Plaintiff brings the following claims in this action: (i) illegal retention of tips in violation of the FLSA and NYLL; (ii) failure to pay minimum wage and wage theft in violation of FLSA and NYLL; (iii) failure to provide a "time of hire" wage notice in violation of the NYLL; (iv) failure to provide wage statements in violation of NYLL; and (v) failure to pay deductible costs of operating an automobile for business purposes. ECF No. 1.

In Section 1, the Waiver Agreement provides as follows:

> "this Agreement applies, without limitation, to *any dispute or controversy arising out of*, relating to . . . compensation . . . minimum wage . . . overtime . . . *Fair Labor Standards Act* . . . any and all state statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims arising out of or relating to your employment or the termination of employment."

ECF No. 23-1 at 2, Waiver Agreement § 1 (emphasis added).

4

Each of Plaintiff's claims either directly invokes the FLSA, or if not, the claim invokes the NYLL, which addresses the "same or similar subject matter" as the FLSA. *Id.*; s*ee also Robinson v. Great Performances/Artists as Waitresses, Inc.*, 195 A.D.3d 140, 145 (2021) ("The policies behind the New York [Labor] laws are similar to the [FLSA]."). The last claim does not directly invoke either statute, but since Plaintiff alleges a failure to pay reimbursable expenses, the Court interprets that claim as alleging a compensation claim. Altogether, each of Plaintiff's claims allege a dispute regarding compensation or a violation of the FLSA or another "state statute[] . . . addressing the same or similar subject matter." ECF No. 23-1 at 2, Waiver Agreement § 1. Therefore, all the claims brought by Plaintiff in this case are covered by the Waiver Agreement.

In Section 3, the Waiver Agreement clearly and unequivocally strips Plaintiff of the right to bring a class or collective action in disputes covered by the Waiver Agreement. Section 3 of the Waiver Agreement provides as follows:

> "Both you and the Company agree that any proceeding to resolve or litigate any dispute covered by this Agreement . . . will be conducted on an *individual basis only*, and that neither you nor the Company will seek to have any controversy, claim or dispute heard as a class action, a representative action, a collective action . . . or any other action in which the Company or you propose to act in a representative capacity on behalf of others. . . Accordingly there will be *no right or authority for you to bring any dispute covered by this Agreement as class or collective action*, or for you to participate as a member in any such class or collective proceeding."

ECF No. 23-1 at 4, Waiver Agreement § 3 (emphasis added). Having already determined that the Waiver Agreement covers claims such as those brought in this case, it necessarily follows that the Waiver Agreement precludes the class and collective action claims brought in this case.

  II.   **The Waiver Agreement is Not Unconscionable.**

To demonstrate that a contract is unconscionable under New York law, Plaintiff must show that the contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal

terms." *Gillman v Chase Manhattan Bank, NA.*, 73 N.Y.2d 1, 10 (1988). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* (internal quotation marks omitted).

"The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice." *Simar Holding Corp. v. GSC*, 87 A.D.3d 688, 689 (2d Dep't 2011). Examples of procedural unconscionability include "high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties." *Id.* at 689-690.

"The determination of unconscionability is a matter of law for the court to decide." *Simar Holding Corp.*, 87 A.D.3d at 690. "Where the significant facts germane to the unconscionability issue are essentially undisputed, the court may determine the issue without a hearing." *Scott v. Palermo*, 233 A.D.2d 869, 870 (4th Dep't 1996).

Plaintiff argues that the execution of the Waiver Agreement is procedurally unconscionable because of high pressure tactics and unequal bargaining power. Plaintiff argues that there was an unequal bargaining power between him and his employer because he was a "line employee of a large corporation, presented with a series of pre drafted documents the terms of which he could not negotiate." ECF No. 33 at 16. However, "mere inequality in bargaining power between employers and employees is not alone sufficient to hold … agreements unenforceable," *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 150 (2d Cir. 2004), "unless this power is somehow abused." *See* Robert S. Adler; Elliot M. Silverstein, W*hen David Meets Goliath: Dealing with Power Differentials in Negotiations*, 5 Harv. Negot. L. Rev. 1, 7 (2000). Plaintiff has not alleged

that Defendants abused their bargaining power. Even if Plaintiff did make such an allegation, no reasonable jury could agree with Plaintiff respecting the class action waiver because the Waiver Agreement contained a 14-day opt-out period during which Plaintiff could have informed Defendants of his choice not to give up that right. *See* ECF No. 23-1 at 4, Waiver Agreement § 4 ("Your Right to Opt Out of Class Action Waiver).[1]

Plaintiff further argues that Defendants employed high-pressure tactics to coerce him to sign the agreement without reading it. Specifically, he states that he was "pressured by management not to read any of the documents . . . but rather speed through the process as quickly as possible." ECF No. 33 at 16. Plaintiff supports this argument with the allegation that the onboarding process took place in the "middle of his shift to create a time pressure . . . without reading the screen or popups or asking questions…" ECF No. 32-4 ¶14.

None of these arguments militates a conclusion of procedural unconscionability. As an initial matter, this alleged time pressure argument is unsupported by the evidence. Both Defendants and Plaintiff agree that he executed the Waiver Agreement on March 6, 2019. ECF No. 32-5 ¶4. Although Plaintiff alleges in his response declaration and counter statement of undisputed material facts that his first day was March 6, 2019, ECF No. 32-5 ¶4, ECF No. 32-4 ¶3-4, Plaintiff originally alleged in his complaint that his first day of employment was March 8, 2019. The March 8th start date is consistent with the business records Defendants have submitted in reply, which shows no record of Plaintiff working prior to March 8, 2019. Therefore, the dispute regarding Plaintiff's date of hire is created only by Plaintiff's self-serving affidavit in support of his claim that he was rushed during the signing process. The Court does not find the dispute genuine and concludes that no

---

[1] Section 4 of the Waiver Agreement provides as follows: "*You may submit a statement notifying the Company that you wish to opt out* and not be subject to this Agreement. In order to opt out, you must notify the Company *within fourteen (14) days* of your receipt of this Agreement…" ECF No. 23-1 at 4, Waiver Agreement § 4 (emphasis added).

reasonable juror could conclude that Plaintiff's first day of employment was any day other than March 8, 2019. Since Plaintiff's first day was March 8, 2019, and not March 6, 2019, the day he completed the onboarding process, Plaintiff's argument that he faced the high-pressure tactics to quickly return to his delivery shift is without merit and will not be credited.

Even if Plaintiff could credibly argue that he was pressured to sign quickly, Plaintiff "cites to no legal authority indicating that defendants were required to provide him with any certain length of time to review the Agreement." *Acevedo v. Silk Corp.*, No. 153421/2016, 2017 WL 1345589, at *3 (N.Y. Sup. Ct. Apr. 12, 2017). The plaintiff in *Acevedo*, made similar allegations that she was sped through the execution process, but that court refused to find the circumstances procedurally unconscionable. Moreover, as in *Acevedo*, Plaintiff here does not attest that he requested additional time to review the agreements and that such additional time was denied. *Id*. He only argues that he felt pressure to move quickly because he needed to get back to a purported delivery shift, for which there is no evidentiary basis to believe existed on that date.  Finally, as previously discussed, even if Plaintiff was in fact rushed through the process, he had 14 days to change his mind through the opt-out provision. *See* ECF No. 23-1 at 4, Waiver Agreement § 4.

Plaintiff's last argument is that he was not given the option to sign some documents and not others during the onboarding process, but rather that he had to sign all the agreements at once. *Id.* According to Plaintiff, this is evidenced by the fact that the timestamp on his electronic signature for each of the documents he signed reflects the exact same second. ECF No. 33 at 16. Defendants refute this claim with evidence showing that the portal through which Plaintiff completed the onboarding process tracked when Plaintiff viewed and clicked "yes" on each separate agreement at a separate moment in time. ECF No. 37 ¶ 7; ECF No. 37-2 at 4. Defendants support this version of events by attaching a copy of the system log which shows that Plaintiff

clicked "yes" on the Waiver Agreement at 7:16:14 PM, six minutes before the timestamp that recorded his electronic signature at 7:21:56 PM. ECF No. 37-2 at 4. Although the electronic signature was applied uniformly at the same time, the system records show that Plaintiff viewed each agreement separately and had the option to click "yes" or "no" for each one. Finally, Plaintiff was also given the opportunity to go back and review any of the agreements to which he previously indicated an assent. ECF No. 37 at ¶ 10.

Plaintiff does not put forth any arguments of substantive unconscionability and could not because "a contractual proscription against class actions, such as contained in the agreements, is neither unconscionable nor violative of public policy." *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354 (1st Dep't 2003); *see also Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84 (2d Cir. 2020) ("a contractual proscription against class actions is neither unconscionable nor violative of public policy.").

Because Plaintiff has failed to demonstrate that the Waiver Agreement is unconscionable, the Court must enforce the Waiver Agreement against Plaintiff. *See W. Massachusetts Mut. Fire Ins. Co. v. Hilton*, 42 A.D. 52, 61(App. Div. 1st Dep't 1899) ("If this contract is valid by the laws of that state, we must enforce the contract, because the parties to it have entered into a valid and bona fide contract, which imposes an obligation upon them, and which obligation they are bound to perform."). Here, the Waiver Agreement prohibits class and collective actions pursuing claims of the type brought in this case. Accordingly, having signed and agreed to the terms of the Waiver Agreement, Plaintiff may not bring the class and collective action claims asserted in this case.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgement (ECF No. 20) is GRANTED, and Plaintiff's class and collective action claims asserted in the complaint (ECF No. 1) are dismissed.

IT IS SO ORDERED.
Dated: March 11, 2024
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court
Western District of New York