UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH LEE,

*Plaintiff,*

Case # 23-CV-6321-FPG

v.

DECISION AND ORDER

INSOMNIA COOKIES LLC, KRISPY KREME INC.,
SERVE U BRANDS, INC., and
SETH BERKOWITZ,

*Defendants*.

## INTRODUCTION

Plaintiff, Joseph Lee, brings this action against defendants INSOMNIA COOKIES LLC ("Insomnia Cookies"); KRISPY KREME INC. ("KKI"); SERVE U BRANDS, INC. ("Serve U"); and SETH BERKOWITZ (collectively, the "Defendants"), alleging several violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). ECF No. 1. Plaintiff proceeds individually after a previous order of this Court granted Defendants' motion for partial summary judgment, dismissing the collective and class action claims brought on behalf of a class of other employees similarly situated. ECF No. 40. The Court now addresses Defendants simultaneous motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). ECF No. 25.  For the reasons stated below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Plaintiff was employed as a delivery driver for Insomnia Cookies at its Mount Hope Avenue location in Rochester, NY from March 8, 2019 until March 29, 2022. ECF No. 1 ¶33. From his first day until January 1, 2022, Plaintiff was paid an average of $14.50 per hour for an average of

---

[1] For purposes of the present motion, the facts in this section are taken from Plaintiff's complaint and presumed to be true.

25 hours per week, and thereafter until March 29, 2022, Plaintiff was paid an average of $15.75 per hour for an average of 30 hours per week. *Id.* ¶¶44-45.

Throughout the course of his employment, Plaintiff did not receive a statement with his weekly payment that accurately reflected the tips he received from customers. *Id.* ¶52. Rather, he consistently received less than the full amount of tips that customers would give him. *Id.* ¶54. The difference between the amount of tips customers paid him and the amount he received was about $10 to $15 each week. *Id.* Plaintiff complained to his supervisor about the missing tips in September 2020, but alleges that shortly thereafter, his weekly working hours were reduced from 25 hours per week to 20 hours per week. *Id.* ¶¶38-39. Plaintiff also alleges that IN September 2020, his hours were increased to 30 hours per week. *Id.* ¶40.

On June 14, 2023, Plaintiff filed this action alleging failure to pay minimum wage, misappropriation of tips, in each case under the FLSA and NYLL, and failure to provide wage statements and time of hire wage notice under the NYLL and "failure to pay delivery experts working 'on the road.'" ECF No. 1 ¶¶70-107.

## LEGAL STANDARD

### I.   Rule 12(b)(2)

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Ent., Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). When the issue of personal jurisdiction is "decided initially on the pleadings and without discovery, the plaintiff need show only a prima facie case" of jurisdiction. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). A prima facie showing "must include an averment of facts that, if credited . . . would suffice to establish

jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (alteration in original) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

"In reviewing a Rule 12(b)(2) motion, 'a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists.'" *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11-cv-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012)). Courts must construe the pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The plaintiff's allegations must provide "factual specificity necessary to confer jurisdiction." *Jazini ex rel. Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). Conclusory statements, including legal conclusions, not accompanied by supporting facts are insufficient. *Id.*

## II.    Rule 12(b)(6)

To succeed on a motion to dismiss under Rule 12(b)(6), the defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  A claim is plausible when the plaintiff pleads sufficient facts that allow a court to draw reasonable inferences that the defendant is liable for the alleged conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility "is not akin to a probability requirement."  *Id.*  Instead, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotation marks and citation omitted).  A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.  In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

## DISCUSSION

Defendants move to dismiss the entirety of Plaintiff's complaint, arguing that Plaintiff has failed to allege sufficient facts to state a claim of failure to pay minimum wage and misappropriation of tips under the FLSA. Further, according to Defendants, since Plaintiff's FLSA claims are subject to dismissal, Defendants urge the Court to decline to exercise supplemental jurisdiction over his remaining state law claims. Finally, Defendants seek dismissal of all claims against Mr. Berkowitz and KKI. In the case of Mr. Berkowitz, Defendants argue that Plaintiff has failed to sufficiently allege that he is an "employer" under the FLSA, thus not subject to liability for any of the claims. Finally, Defendants maintain that the Court does not have personal jurisdiction over KKI.

Plaintiff opposes Defendant's motion and also seeks leave to amend the complaint to add a claim for retaliation, which Plaintiff argues was plausibly alleged in the original complaint. Defendants oppose this request.

For the following reasons, the Court grants dismissal of the minimum wage claim, and all claims against both Mr. Berkowitz and KKI. Because the misappropriation of tips claim under the FLSA survives, the Court retains supplemental jurisdiction over the remaining state law claims.

The Court grants Plaintiff's motion to amend the complaint to add claims for retaliation under the FLSA and NYLL.

## I.     There is no Personal Jurisdiction over KKI

There are two types of personal jurisdiction, general and specific. General jurisdiction permits a court to "to hear any and all claims against" a foreign corporation, but may only be asserted "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Corporations are generally considered as "at home" in the states where they are incorporated or where they maintain their principal place of business. *Id.* at 137. These two locations are "paradig[m] ... bases for general jurisdiction" over a corporation. *Id.* Alternatively, specific personal jurisdiction is implicated when "the claim arises out of, or relates to, the defendant's contacts with the forum" such that it can be said that it "'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Personal jurisdiction in federal courts is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). This determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). In New York, the court must first determine whether personal jurisdiction is appropriate pursuant to the state's general jurisdiction statute, N.Y. C.P.L.R. ("C.P.L.R.") 301, or its long-arm jurisdiction statute, C.P.L.R. 302(a). If the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the court's

exercise of personal jurisdiction comports with due process. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

### A. General Jurisdiction

Plaintiff alleges in his complaint that KKI is a corporation organized under the laws of the State of New York and has its principal place of business in North Carolina. ECF No. 1, at ¶¶ 14-15. Defendant disputes that KKI is a New York corporation, asserting that KKI is a holding company incorporated in Delaware. ECF No. 27 at 1; ECF No. 29 at ¶3. In opposing Defendant's motion, Plaintiff does not dispute Defendant's factual assertion, nor does Plaintiff provide any affirmative evidence to the contrary.

The Court, therefore, relies on Defendants' assertion that KKI is incorporated in Delaware. The Court also takes judicial notice of KKI's certificate of incorporation on file with the Delaware Secretary of State, which is publicly available on the Delaware Secretary of State's website. *See McMichael v. U.S. Filter Corp.*, No. 99-182, 2001 WL 418981, at *8 (E.D.Ca. Feb.23, 2001) (taking judicial notice of certificate of incorporation in Delaware). Therefore, the Court finds that KKI is incorporated in Delaware.

Because KKI is incorporated in Delaware and Plaintiff alleges that KKI's principal place of business is in North Carolina, Plaintiff has failed to allege that New York is the paradigm forum of general jurisdiction for KKI. See *Daimler*, 571 U.S. at 137  (holding that the paradigm forum for general jurisdiction of a corporation is the state of its place of incorporation and its principal place of business).

Although Plaintiff has failed to allege that New York is a paradigm forum for general jurisdiction, the paradigm forums are not the exclusive forums for general jurisdiction. *Brown v.*

*Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (citing *Daimler* 571 U.S. at 137 (2014)). General personal jurisdiction may be exercised where additional facts indicate that a defendant continued presence is "so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 122. "Additional indicia of a corporation's presence in the forum include whether it has employees, agents, offices, banks account, or property within the state; whether it is authorized to do business there; the volume of business it conducts with state residents; whether it has a phone listing in the state; whether it does public relations work there; and whether it pays state income or property taxes." *Brown*, 57 F. Supp. 3d at 354 (citing *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003); *Bossey ex rel. Bossey v. Camelback Ski Corp.*, 21 Misc. 3d 1116(A), No. 36142-07, 2008 N.Y. Slip Op. 52080(U), at *3, 2008 WL 4615680 (N.Y. Sup. Ct. 2008)).

Defendants argue that KKI is not at home in New York because it (1) does not employ or recruit any employees in New York, ECF No. 29 at ¶10, (2) does not solicit business from or service any employees in New York, *id.*, (3) does not have an office in New York, *id.* at ¶11 (4) does not have a mailing address or telephone number in New York, *id.* at ¶12, (5) does not have a bank account in New York, *id.* at ¶13, and (6) does not possess any real property in New York, *id.* Defendants have submitted an affidavit attesting to the foregoing facts and Plaintiff does not dispute Defendant's factual assertions. Plaintiff also fails to allege any other additional indicia of KKI's presence in New York. ECF No. 33 at 4-6. Accordingly, the Court finds that Plaintiff has failed to properly allege that this Court has general personal jurisdiction over KKI.

## B. Specific Jurisdiction

New York's long-arm statue provides that courts may exercise specific jurisdiction over out-of-state defendants where the claim arises from (1) a transaction of business within the state,

(2) a commission of a tortious act within the state, or (3) a commission of tortious acts without the state causing injury within the state. C.P.L.R. § 302(a)(1)-(3).  Plaintiff does not allege any tortious act by any of the defendants, so the second and third prongs of the long-arm statute for specific jurisdiction are not plausibly alleged and therefore unavailable. The Court will consider whether Plaintiff has plausibly alleged specific jurisdiction under the first prong of the long-arm statute.

C.P.L.R. section 302(a)(1) permits the exercise of jurisdiction over a nondomiciliary when the claim arises from the "transact[ion of] any business within the state or contract[ ] anywhere to supply goods or services in the state." A finding of jurisdiction under this provision requires a showing that: (1) a defendant "transacts any business" in New York; and (2) the claim "arises from" such transaction. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). Respecting the first prong of the jurisdictional inquiry, a defendant transacts business if it is engaged in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York]." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (alteration in original).

Here, Plaintiff fails to allege that his wage and tip claims under the FLSA arise out of any business that KKI has transacted in the State of New York. Plaintiff could not plausibly make such allegation because the basis of his complaint is that he was an employee of Insomnia Cookies and all of his claims arise from his employment with Insomnia Cookies. *See* ECF No. 1 at ¶7 ("Plaintiff . . . was employed . . . to work as a Delivery Driver for Corporate Defendant INSOMNIA COOKIES…"). Although, some allegations in his complaint refer to all of the Defendants collectively, such conclusory allegations will not be credited in light of the clear allegation of who employed him and who paid his wages—Insomnia Cookies. Since his wage claim and misappropriation of tips claim relate directly to his employment with Insomnia Cookies and Plaintiff has alleged no further facts involving KKI's actions in relation to those claims, Plaintiff

has failed to allege that KKI transacted any business in New York giving rise to his claim. Accordingly, Plaintiff has failed to properly allege that this Court can exercise specific personal jurisdiction over KKI in this case.

Because Plaintiff has failed to demonstrate that exercise of general or specific personal jurisdiction would be appropriate, the Court need not address the constitutional due process implications of exercising any such jurisdiction.

### C.  Enterprise

Plaintiff's sole argument in opposition to Defendant's motion to dismiss KKI as a defendant is that KKI, together with Insomnia Cookies and Serve U Brands, constitute one "enterprise" under the FLSA. ECF No. 33 at 4. According to Plaintiff, because KKI and the other two defendants are one "enterprise," then the FLSA applies equally to KKI as the other defendants. Plaintiff's argument proceeds to describe the various elements that courts must consider in determining whether distinct entities constitute one "enterprise." *Id.* at 5.

Plaintiff's reliance on the "enterprise" theory is misplaced. Whether KKI and the other two defendants constitute an "enterprise" only relates to KKI's potential liability for their alleged violations of the FLSA. Liability under the FLSA has no bearing on personal jurisdiction because, as a general matter, liability and jurisdiction are two  different inquiries. *See, e.g., U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 157 (2d Cir. 2019) ("Therefore, even assuming that [defendant] was liable under a successor liability theory, its successor liability did not render it subject to New York jurisdiction.").

 Because Plaintiff has not shown that general or specific personal jurisdiction is appropriate over KKI, and its argument that it is subject to jurisdiction as an "enterprise" with the other two defendants is irrelevant, the Court dismisses KKI as a defendant for want of personal jurisdiction

in this case. Defendants motion to dismiss KKI pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted.

## II.    Mr. Berkowitz is not an Employer under the FLSA

Defendants move to dismiss claims against Seth Berkowitz, arguing that Plaintiff has failed to sufficiently allege that Seth was his "employer" as defined in the FLSA.[2] Because the Court agrees, all claims against Mr. Berkowitz are dismissed and Mr. Berkowitz is dismissed as a defendant in the action.

Section 203(d) of the FLSA defines employer as follows:

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d). The Second Circuit has established four factors for determining whether the "economic realities" of an employment relationship causes the subject employer to meet the definition of "employer" under the statute. Those factors are: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984)).

Where the alleged employer is an individual within an entity that is undisputedly the plaintiff's employer, the analysis is different. The individual must possess "control over a company's actual 'operations' in a manner that relates to a plaintiff's employment . . . such as

---

[2] Defendants also argue that KKI does not qualify as an "employer" under the FLSA, however, because KKI is dismissed for want of personal jurisdiction, the Court does not address that argument here. Even if KKI was not dismissed for want of personal jurisdiction, the Court would dismiss KKI for the same reasons it dismisse Mr. Berkowitz—failure to sufficiently allege that the economic realities reflect an employment relationship between Plaintiff and KKI.

workplace conditions and operations, personnel, or compensation." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.*

Here, Plaintiff's complaint alleges the following:

> SETH BERKOWITZ the Owner and Founder, and CEO of INSOMNIA COOKIES, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at INSOMNIA COOKIES; SERVE U BRANDS INC; and KRISPY KREME INC f/d/b/a Krispy Kreme Doughnut of New York d/b/a Krispy Kreme.

ECF No. 1 at ¶18. These allegations are conclusory and clearly tailored to meet the legal test of an "employer" established in *Irizarry*. At the motion to dismiss stage, it is insufficient to "merely restate the legal test to qualify as an 'employer' under the statute." *Gill v. ACACIA Network*, No. 13 CIV. 9088, 2015 WL 1254774, at *7 (S.D.N.Y. Mar. 18, 2015); *see also Peng Bai v. Fu Xing Zhuo*, No. 13 CIV. 05790, 2014 WL 2645119, at *4 (E.D.N.Y. June 13, 2014) ("allegations that [individual defendant] had the power to hire, fire, set wages, set work conditions, and maintain employment records are conclusory and inadequate to establish that [individual defendant] was an employer, as several courts in this circuit have held."). A plaintiff must allege sufficient factual content to plausibly allege that the legal test is met.

In *Gill*, the court dismissed the plaintiff's complaint because it merely stated that certain "executive staff was responsible for hiring and firing and in control of all conditions affecting our employment and compensation." *Id.* Plaintiff's complaint here is no different than the complaint in *Gill* and lacks sufficient factual content to survive a motion to dismiss. Accordingly, Defendant's motion to dismiss claims against Mr. Berkowitz is granted and Mr. Berkowitz is dismissed from the action.

**III.    Minimum Wage**

Section 206(a)(1)(C) of the FLSA provides that "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . $7.25 an hour." 29 U.S.C. § 206(a)(1)(C). Although not obvious on its face, this provision does not require an employer to pay an employee a minimum of $7.25 for each hour that is worked in any workweek, rather, it only requires an employer to pay each employee a minimum average of $7.25 across all hours worked in any given work week. *See United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960) (Holding that there is not violation of the FLSA minimum wage provision "so long as the total weekly wage paid" does not fall below "the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.").

Here, Plaintiff has alleged that, during the first year of his employment, he was required to regularly drive three employees to and from the store several days each week. ECF No. 1 ¶41. This additional driving time was about forty-five minutes each week and was uncompensated labor. *Id.* Plaintiff has simultaneously alleged that during his first year of employment, he was paid an average of $14.50 per hour for 25 hours of work each week.  *Id.* ¶36, 44. Plaintiff has thus only alleged that there were some hours that he worked for which he was paid less than the hourly minimum wage. However, Plaintiff may not bring a claim on this basis alone. In order to sustain a claim for failure to pay minimum wage, Plaintiff "must also allege that he worked a sufficient number of hours for no pay (or below the minimum), such that his average hourly pay for the week dropped below the federal minimum." *Bustillos v. Acad. Bus, LLC*, No. 13-cv-565, 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014). Plaintiff has not done so here. Even if the extra forty-five minutes of unpaid work were added to his weekly hours, his average pay would only drop to $14.08/hour,

well above the minimum rate of $7.25/hour. "As long as a Plaintiff's average wage exceeds the federal minimum wage" there is no violation of the FLSA minimum wage provision. *Alfonso v. Mougis Logistics Corp.*, No. 21-CV-5302, 2021 WL 5771769, at *4 (S.D.N.Y. Dec. 6, 2021).

In opposing Defendants' motion to dismiss this claim, Plaintiff acknowledges defeat on his minimum wage claim by stating that even his "converted hourly wages [] amount to more than the FLSA minimum wage, he does not have an FLSA minimum wage claim." ECF No. 33 at 4. He instead insists that he seeks to bring a "gap-time" claim. *Id.* at 8. "A gap time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir.2013). Plaintiff's gap-time theory of liability still falls short of stating a claim upon which relief can be granted because the "FLSA does not provide for a gap-time claim even when an employee has worked overtime." *Id.* at 116.

Because Plaintiff has failed to properly allege a failure to pay minimum wage claim under the FLSA, and his alternative theory of liability based on a gap-time claim is not cognizable under the FLSA, Defendants' motion to dismiss his FLSA minimum wage claim is granted.

## IV.    Misappropriation of Tips

The FLSA provides that "an employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C.A. § 203(m)(2)(B). Plaintiff brings a claim under this provision alleging that the "tips [he] received from Defendants [were] consistently less than the amount of tips the customers have given for him." ECF No. 1 ¶54. Plaintiff goes further to specifically allege that "on average an estimate of at least around ten ($10) to fifteen ($15) in tips were misappropriated each week." *Id.*

Defendants are seeking to dismiss this claim by arguing that it is speculative in nature. ECF No. 27 at 7. According to Defendants, Plaintiff's claim lacks sufficient factual matter to cross the plausibility threshold because "he does not identify a single instance of such misappropriation, provide any detail regarding where these gratuities went, or how the gratuities he received on a per delivery basis failed to reconcile with the weekly distribution of the same." *Id.* With this argument, Defendants ask for too much.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff's obligation "requires more than labels and conclusions," a plaintiff's complaint "does not need detailed factual allegations." *Twombly*, 550 U.S. at 545. A plaintiff's complaint simply needs to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 545. Here, Plaintiff has done just that.

Plaintiff alleges more than mere legal conclusions. First, he specifically alleges the amount of tips that were misappropriated—ten to fifteen dollars. Defendants prefer to hold Plaintiff to a higher standard that requires him to explain "how the gratuities he received on a per delivery basis failed to reconcile with the weekly distribution of the same," ECF No. 27 at 7.In other words, Defendants prefer that Plaintiff allege each delivery made and each tip purportedly given for that delivery from a customer, and then separately allege each tip purportedly received by Plaintiff for each delivery. That is much too granular and unnecessary.  Such a detailed allegation would then require the court to take out its calculator to add up the total amount of tips given and subtract from it the total amount of tips received to confirm that Plaintiff indeed received less than the total amount of tips he is purportedly entitled to receive. Plaintiff has simply done the math in advance

and stated the result of that math problem, while Defendants would prefer to assign the court math homework.

Moreover, contrary to Defendants' assertion that "he does not identify a single instance of such misappropriation," Plaintiff identifies several. Specifically, Plaintiff alleges that his tips were misappropriated "each week." ECF No. 27 at 7; ECF No. 1 at ¶54. With this information, Defendants are put on fair notice that Plaintiff's claim for misappropriated tips spans at least the entire duration of his employment on a weekly basis and that the amount involved ranges between ten to fifteen dollars in each instance. Defendants also demand that Plaintiff allege facts that are uniquely within Defendants' possession by expecting Plaintiff to "provide [] detail regarding where these gratuities went." ECF No. 27 at 7. However, since in Plaintiff's position, he had no visibility into how Defendants handled money in their possession, he could not reasonably be required to put forth such specific allegations prior to gaining access to relevant books and records in discovery. Plaintiff has stated that he received less than the full amount of tips given for him by customers, and since his tips were processed through his paycheck by his employer, the Court can reasonable infer that it was his employer who retained the difference. Plaintiff need not allege the identify of a specific person within his employer's organizational structure who retained the tips or a specific account where the missing tips were directed in order to make the inference plausible.

The amount of detail that Defendants seek from Plaintiff regarding the misappropriation of tips at this stage exceed the exacting plausibility requirements of *Twombly*. Taking Plaintiff's allegation as true, that Plaintiff received less than the full amount of tips given for him, the Court finds that Plaintiff has sufficiently and plausibly stated a claim to relief under section 203(m)(2)(B) of the FLSA. Accordingly, Defendants' motion to dismiss this claim is denied.

## V.    Motion to Amend Complaint

Plaintiff has requested leave to amend his complaint to add a claim of retaliation under the FLSA and NYLL. ECF No. 33 at 13. Defendants oppose Plaintiff's motion to amend because of several procedural deficiencies. ECF No. 34 at 5-7. In the alternative, Defendants also argue that Plaintiff's amendment would be futile because he cannot plausibly allege a claim for retaliation. *Id.* at 7-10. For the following reasons, the Court disagrees with Defendants and grants Plaintiff's motion to amend.

Defendants are correct that Local Rule 15(a) requires Plaintiff to attach a proposed amended pleading to a notice of motion to amend and Plaintiff has not done so here. ECF No. 34 at 6 (citing Local Rule 15(a)). However, "courts should freely give leave to amend a complaint when justice so requires." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (citing Fed. R. Civ. P. 15(a)(2)) (quotation omitted). This is a "permissive standard" because of a "strong preference for resolving disputes on the merits." *Id.* at 212–13 (quotation omitted).

Plaintiff's failure to comply with the Local Rule is not fatal in this case where Plaintiff has provided the Court with an indication of what the amended pleading will contain. Contrary to Defendants' argument, this is not comparable to the circumstances this Court addressed in *Orange Transportation Servs., Inc. v. Volvo Grp. N. Am., LLC*, where the plaintiff requested leave to amend his pleading in his opposition to the motion to dismiss. 450 F. Supp. 3d 311, 329 (W.D.N.Y. 2020). There, this Court denied the request because the plaintiff had not provided "the Court with any indication as to how leave to amend would cure the deficiencies in the Complaint." Even though the request was denied, this Court granted leave to the plaintiff to file a formal notice of motion with the proper documents attached. Here, it would be unnecessary to deny Plaintiff's request because he has indicated that he will add a claim for retaliation and emphasized that the factual allegations necessary to plausibly allege such claim are already present. No. 33 at 13. Because the

Cout agrees that the factual allegations which would form the basis of Plaintiff's new complaint are already present in the existing complaint, the Court is already on notice of what the new pleading will be and exercises its discretion to waive the requirement under Local Rule 15(a) for purposes of the present motion.

Even so, Defendants insist that an amended complaint would be futile because Plaintiff could not plausibly allege a claim for retaliation under the FLSA. ECF No. 34 at 7. The Court disagrees. "The pleading requirements for retaliation claims under both the FLSA and NYLL significantly overlap . . . as such, both claims are analyzed using the same standards at the pleading stage." *Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 149–50 (E.D.N.Y. 2023). To establish retaliation under the FLSA the plaintiff must show "(1) participation in protected activity known to the defendant . . . (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

Regarding the first factor, Defendants dispute that Plaintiff engaged in protected activity because Plaintiff "does not allege that [he] filed a formal complaint." ECF No. 34 at 9.  Defendants err in their interpretation of the law on this point. Although the text of the FLSA states that it shall be unlawful "to discharge or in any other manner discriminate against any employee because such employee *has filed any complaint* . . . under or related to this chapter . . ." 29 U.S.C.A. § 215(a)(3) (emphasis added), the Second Circuit has held that the language "file[ ] any complaint [] encompass[es] oral complaints made to employers in a context that makes the assertion of rights plain." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015). Here, Plaintiff has alleged that he complained to his supervisor regarding the misappropriated tips in September of 2020. He does not specify whether his complaint was written or oral, but given the Second Circuit's

interpretation of "file any complaint," that distinction has no significance in determining whether Plaintiff engaged in protected activity. As to whether Plaintiff's complaining about the misappropriated tips made his assertion of rights under the FLSA "plain," that is a "context-dependent inquiry." At this stage, it would be improper for the Court to conclude that there are no facts that Plaintiff could allege that would meet this standard. *Greenhouse*, 784 F.3d at 115-116. Therefore, the Court finds that it is possible for Plaintiff to sufficiently plead engaging in protected activity in an amended pleading.

Defendants further argue that Plaintiff cannot plead that he suffered an adverse action. ECF No. 34 at 9. For this assertion, Defendants rely on the fact that in one part of his complaint he alleges that he worked an average of 30 hours per week from September 9, 2020, through March 29, 2022. ECF No. 34 at 9; ECF No. 1 ¶40. According to Defendants, if Plaintiff worked an average of 30 hours per week starting September 9, 2020, then that represents an increase in hours from his prior average of 25 hours per week. ECF No. 34 at 9-10.  While this is an accurate statement of allegations in the Complaint, Plaintiff also alleges that his hours were reduced to 20 hours per week in or around September 2020. ECF No. 1 ¶¶36, 38-39. If Plaintiff's allegation of reduced hours is to be credited, then Plaintiff has sufficiently alleged an adverse employment action necessary for the retaliation claim. Plaintiff acknowledges this apparent contradiction and argues that he will clarify it in his amended complaint. ECF No. 33 at 13. The Court can imagine several circumstances that would cause this apparent inconsistency and, therefore, will permit Plaintiff to cure this apparent incongruity in an amended pleading.

Finally, Defendant's argue that Plaintiff cannot plead a causal nexus between his alleged complaint of misappropriated tips and the alleged adverse action. ECF No. 34 at 9-10. Defendants do not dispute that at the motion to dismiss stage, "[c]ausation may be . . . inferred through

temporal proximity to the protected activity." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). Indeed, this is exactly what Plaintiff alleges in his complaint, that he complained to his supervisor and then shortly thereafter he suffered an adverse employment action in the form of reduced hours. Rather, Defendants argue that Plaintiff is not entitled to an inference of causation because he has not alleged exactly to whom he made the complaint. ECF No. 34 at 10.[3] Not only is Defendants statement of Plaintiff's allegation incorrect on its face—Plaintiff clearly alleges that he complained to his "supervisor, regional manager and HR," ECF No. 1 ¶38, people who are easily identifiable—but Defendants, again, put forth a theory of the law that is remarkably unfitting in the context of this case.

Defendants hang their hat on the outcome in *Reed v. Fortive Corp.*, where the court ruled that the plaintiff failed to allege facts to plausibly infer a causal nexus because "the pleading does not identify the persons within Qualitrol who made the complained-of decisions." No. 21-CV-6312, 2023 WL 4457908, at *21 (W.D.N.Y. July 11, 2023). This ruling has no persuasive value in this case because the circumstances in *Reed* were completely different. In *Reed*, the plaintiff was employed by a company named Qualitrol, which was one of several subsidiaries owned by the defendant named Fortive Corporation. *Id.* at 1. Plaintiff alleged that she filed a complaint with Fortive, but that she suffered adverse employment actions from Qualitrol. *Id.* at 21. Because the two companies were so distinct as to have "different principal places of business (Rochester, New York, and Everett, Washington, respectively), different corporate executives, and different boards of directors," it was less plausible that a complaint to one would necessarily be known by the other.

---

[3] Defendants also argue that the causal connection between his alleged complaint and the alleged adverse action was broken by the positive intervening event of increased hours. ECF No. 34 at 10. However, since the Court will allow Plaintiff to amend his pleading to clarify the timeline of when his hours were reduced and when they were increased, it would be premature to give any consideration to this argument at this time since the facts that give salience to this argument might change in the amended pleading.

*Id.* at 1, 21. Absent factual allegations to bridge this gap, the Court concluded that an inference of causation was not plausible based on solely on making the complaint and temporal proximity. *Id.* at 21.

Here, there is no allegation of such a complex corporate structure that an allegation of to whom the complaint was made would be relevant and necessary to plausibly infer causality. Plaintiff complained to his supervisor and regional manager at Insomnia Cookies and the adverse action he suffered was through his employment at Insomnia Cookies. In other words, Plaintiff complained to the very entity that he alleged punished him. Unlike *Reed*, there are no facts present in this case that would give reason to believe that the person controlling Plaintiff's hours was insulated from knowing about his complaint. Accordingly, because Plaintiff has alleged that the adverse action was temporally proximate to his protected activity, the Court finds that an inference of causation is appropriate at this stage.

Because the Court agrees that Plaintiff could plausibly alleged a claim for retaliation under the FLSA and NYLL, the Court chooses to exercise its discretion to permit Plaintiff to amend his complaint to add those claims.

## VI.   Supplemental Jurisdiction

Defendants have also moved to dismiss the state law claims raised in Plaintiff's complaint, in the event that all of Plaintiff's FLSA claims are dismissed. ECF No. 27 at 21-22. However, since Plaintiff's misappropriation of tips claims survives the present motion, the Court will retain supplemental jurisdiction over Plaintiff's state law claims pursuant to Section 1367 of Title 28 of the United States Code. *See* 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

## CONCLUSION

For the foregoing reasons, Defendants motion to dismiss (ECF No. 25) is GRANTED in part and DENIED in part. Plaintiff's claim for failure to pay minimum wage under the FLSA is DISMISSED. Plaintiff's claim for misappropriation of tips may proceed. All claims against Mr. Berkowitz are DISMISSED and KKI is DISMISSED from the action for want of personal jurisdiction. The Clerk of Court is respectfully directed to update the case caption accordingly. Plaintiff's request for leave to amend his pleadings is GRANTED to the extent set forth herein. By March 25, 2024, Plaintiff shall file his amended complaint and serve a copy thereof on the remaining Defendants. Defendants shall answer or otherwise respond to the amended complaint within two weeks of it being filed or no later than April 7, 2024.

IT IS SO ORDERED.
Dated: March 11, 2024
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court
Western District of New York

21